**FOLSE v. MARYLAND CASUALTY CO.**
et al.

No. 2055.

Court of Appeal of Louisiana. First Circuit.

Jan. 30, 1940.

Rehearing Denied March 4, 1940.

Writ of Error Denied April 1, 1940.

James R. Parkerson, of Franklin, Marcel Remson, of New Orleans, and C. A. Blanchard, of Donaldsonville, for appellants.

C. Arthur Provost, of New Iberia, for appellee.

LeBLANC, Judge.

On January 25, 1937, the defendant Alcide J. Falgoust entered into a contract with Clarence Kemper to construct for him a residence for the price and sum of $15,690. The plaintiff herein, Edgar P. Folse, engaged in the manufacture of millwork at New Iberia, contracted with Falgoust to furnish certain material estimated at the sum of $3,502.05. He also sold him extra material to the amount of $494.67. All the material so furnished by plaintiff was used by Falgoust in the construction of the Kemper residence. The account was credited with various amounts totalling the sum of $2,645.94 leaving a balance due of $1,361.25.

The contract between Falgoust and Kemper was bonded by the Maryland Casualty Company to the amount of $15,690 in order to secure its performance by Falgoust and to secure the payment of all "merchandise and furnishers of material."

Falgoust failed to pay the balance of $1,361.25 which he owed plaintiff and the purpose of this suit is to secure a judgment on behalf of the latter against Falgoust and the bonding company, for that amount, plus the further sum of $136.12 as attorneys fees.

To the petition of the plaintiff which sets out the facts stated, but in greater detail, the defendant Falgoust filed an answer in which he denied all the allegations made except those referring to the contract and the payments made to plaintiff as therein alleged. He then assumes the position of a plaintiff in reconvention, and, alleging that under his contract with the plaintiff the material to be furnished by the latter was to be delivered within a period of sixty days from the date of the order and that the same was to be first class material and pass the inspection of the architect, he claims that by reason of the plaintiff's failure to make delivery in the time agreed upon and also his furnishing material which was inferior, he was deprived of making the profit which he expected and which he figured to be $1,690, and that he also suffered damages to the amount of $4,500, for all of which he is entitled to obtain a judgment in reconvention against the plaintiff in the sum of $6,190. The damages in the sum of $4,500 which he claims, are not specified in any manner whatever.

In its answer to the plaintiff's petition, the Maryland Casualty Company admits that it bonded the Falgoust contract but it disclaims any liability for extra material not contemplated within the terms of the bond. Besides it sets out credits in addition to those listed in plaintiff's petition of $300 and $500, all of which it contends reduces Falgoust's indebtedness to the plaintiff to the sum of $93.97. It of course denies all liability on certain legal grounds which will be later referred to. It also reconvenes, adopting all the allegations made by Falgoust in his reconventional demand, and asks for judgment against the plaintiff in its favor for a like amount of $6,190.

It might be stated at this time that the note of evidence shows an abandonment by the Maryland Casualty Company of its reconventional demand.

During the trial of the case there was produced before the court an affidavit signed by Jeffrey Folse, a son of the plaintiff, and upon noticing that it contained a statement to the effect that he was a part owner and a partner in the business conducted as Edgar P. Folse, each defendant filed an exception of no cause or right of action on the ground that the real plaintiff before the court was a partnership and that Edgar P. Folse could not prosecute a cause of action in its behalf, as an individual. This exception was referred to the merits and in deciding the case on its merits, the district judge overruled the same. Judgment was then rendered in favor of the plaintiff against both defendants in solido in the sum of $1,352.25. The claim for attorneys' fees was rejected. Both defendants have appealed and plaintiff has answered asking that the judgment be amended by increasing the amount of the award to the original demand and that he be further awarded the attorneys' fees prayed for by him.

■ Taking up for consideration the exception of no right or cause of action first, we might state at the outset that we find that the trial judge was correct in overruling the same.

In connection with the affidavit which formed the basis of the exception, it developed further from the testimony that plaintiff's wife had died some four years preceding the transactions involved in the contract between plaintiff and Falgoust for furnishing material on the Kemper job. Apparently she died intestate. Neither Mr. Folse nor anyone else had ever taken any steps whatever to have her succession opened and administered and he continued to operate his business in his own name as he had done before. Besides Jeffrey Folse there were other children, issue of the marriage between the plaintiff and his deceased wife. Jeffrey, and his sister Miss Julian Folse, worked for their father, the former as a salesman and the latter as bookkeeper. It is not disputed that the property owned by the business was community property and that Mr. Folse had the usufruct thereof as the surviving spouse. The children who worked for the business were paid salaries but neither they nor any of the other children participated in the profits. It is clear that under the provisions of Article 916 of the Revised Civil Code, plaintiff, as surviving spouse, held the usufruct of the property, which in this case was the business he was conducting, during his natural life or until he remarried. Until the expiration of the usufruct, he could enjoy his rights as usufructuary by himself (C.C. Art. 555) and could maintain all actions necessary to insure him in their enjoyment (C.C. Art. 556).

The mere statement in the affidavit signed by Jeffrey Folse does not of itself constitute proof that any partnership exists between him and his father, especially when all other testimony is to the effect that Mr. Folse conducts his business as owner in his own name with usufruct of the community interest which belonged to his deceased wife. He therefore is the proper party to maintain the present action and as already stated, we agree with the district judge in his ruling on the exception of no right or cause of action.

Falgoust's defense on the merits of the case does not impress the court very strongly. Whilst he denies the indebtedness in his answer, he several times admitted that all of the material sold and delivered to him by the plaintiff was used in the construction of the Kemper residence, that all of the credits shown on the statement are correct and that the balance remaining due is also correct.

■ On his reconventional demand he maintains that there was a time limit stipulated in his order given to plaintiff for the material, but the order itself, constituting the estimate agreed upon between them, contains no such stipulation. His sons testified that there was a time limit of sixty days agreed upon for the delivery of the material but this is denied by the plaintiff and his witnesses and it is shown by their testimony that any agreement under which a furnisher of millwork is limited by time in the delivery of the material, is against the custom of that trade. It is necessary, as stated by the plaintiff's witnesses, that even after all estimates are made, measurements have to be taken at frequent intervals while the work is in progress. Besides, as Mr. Folse testifies, such an agreement would greatly handicap anyone engaged in his line of business, as compliance with it would necessarily interfere with other orders which he may have on hand at the same time.

Mr. Falgoust practically admits that what little delay there was in the delivery of the material by Mr. Folse caused him no damage. As a matter of fact he finished his contract with Mr. Kemper within fifteen days of the time specified therein and there were no forfeitures or penalties exacted by either Mr. Kemper or the architect. We might add here also that there is no proof to support the charge that the material furnished was of an inferior grade or did not pass the inspection of the architect. We find no merit in his defense and none in his reconventional demand and again agree with the trial judge in his disposition of these two issues.

The defense of the bonding company may be said to be threefold. First, that the extra material furnished to the contractor increased the cost of the building from the sum of $15,690 to the sum of $16,936.89, without its knowledge or consent, and therefore it cannot be held for a greater amount than it became surety under its bond; second that it cannot be held for the extra material supplied by the plaintiff which amounted to the sum of $497.67 and which as we understand it is charged, was not all used in the construction of the residence; third, that the payments made by Falgoust,

had they been imputed by Folse as they should on the Kemper account, that account would have been settled in full.

▆▆▆ In the first place, the defense that all the material or the extras furnished were not used on the job is not supported by the testimony in the record. On the contrary, Mr. Falgoust admitted by his pleadings, and all the testimony is to the effect that all of the material furnished by Folse under the contract as well as the extras ordered by Falgoust and furnished by him, actually went into the construction of the building. Falgoust as he virtually admits owes the balance claimed by the plaintiff and as the bond furnished by the bonding company is statutory, being a bond provided for by Act No. 298 of 1926, the surety is limited in an action of this kind to the same defenses as those the contractor can make. Falgoust not having urged any such defenses as are now presented, it follows that the bonding company is precluded from successfully invoking them. Besides, it has been held that the furnisher of material is not required to follow his shipment or delivery and to see that it actually goes into the construction of the building. Graphic Arts Bldg. Co. v. Union Indemnity Co., 163 La. 1, 111 So. 470. That decision also holds that the liability of the surety company on a bond of this character is coequal with that of the contractor and seems to dispose of both the first two defenses urged by the bonding company.

The third defense presented may be said to be a bit more serious as it involves both questions of fact and of law.

The testimony reveals that the plaintiff and Falgoust had been doing business together for a great many years and that Falgoust had what may be called a running account with the plaintiff. Even at the time the Kemper contract was being executed by him he was obtaining material on other jobs he was then engaged on. As he received payments, the account was given credit in the order in which the payments were made; not on any particular job or contract but on the general account which he had.

▆▆▆ It is the bonding company's contention that in this particular instance certain of the payments made should have been imputed to the Kemper job because plaintiff had been so directed to do. Article 2163 of the Civil Code provides that "the debtor of several debts has a right to declare, when he makes a payment, what debt he means to discharge." Under Article 2166 of the Code

it is further provided that "when the receipt bears no imputation, the payment must be imputed to the debt, which the debtor had at the time most interest in discharging, of those that are equally due; otherwise to the debt which has fallen due, though less burdensome than those which are not yet payable. If the debts be of like nature, the imputation is made to the debt which has been longest due; if all things are equal, it is made proportionally." Unless, therefore, the debtor Falgoust had declared to Folse, in some manner, what debt he meant to discharge by his payments, or unless the receipt he has bears no imputation, it strikes us that under these provisions of the Code, the payments made were properly applied to the oldest of the amounts that were due under the general account carried on between the two parties.

Whether he had so declared or whether the receipt he has bears an imputation, is the question of fact that is presented.

Falgoust produced several checks given by him to Folse which all bear the notation "on account Kemper work". This, it is contended, constitutes his declaration as to how each payment was to be imputed, and further that the check is the receipt which bears the imputation. The question of fact which arises and on which there is conflict in the testimony, is whether or not the notations were on the checks at the time they were received by Folse and passed for payment or collection through the bank.

▆▆▆ Miss Julian Folse, who as we have already stated acted as bookkeeper for her father, testifies most positively that when these checks were received, none of them bore the notation which is now found on them. She states further that the Falgoust account being one covering a period of over twelve years, she applied all payments made by him through these checks in the order in which they were received, on the running account, without regard to any particular job on which Mr. Falgoust was working.

The district judge seems to have accepted her testimony on this point and we are not disposed to say that he was wrong in doing so. He states in his written opinion, that "from even a casual inspection of the checks in question one will instantly observe that this notation was entered at some date other than when delivered to plaintiff, giving full credence to the testimony of the bookkeeper of plaintiff. One will observe that the notation is in jet black ink, whilst all other writing of each check, as having

been made at a different date, is in blue ink. One must conclude to accept defendant's contention, that though the checks were made at different dates, the writer resorted to blue ink for the entire contents in each instance, and then changed to black ink for the notation. In other words the use of two different inks in writing checks is a most unusual and unexplainable conduct." Besides, as stated by the district judge, the testimony is that Falgoust never questioned the correctness of the balance claimed to be due by Folse, and, as already stated by us, freely admitted the amount. It would be strange indeed, if he had directed the imputation of his payments to any particular items on that account, that he would not have called Folse's attention thereto long before this defense was made by the bonding company. As we resolve this question of fact in favor of the plaintiff it then becomes easy to apply the law regarding imputation under Article 2166 of the Revised Civil Code.

The defendant contends that even if it be held that there was no imputation directed that the payment should have been applied to the Kemper account because that was the debt which Falgoust had the most interest in discharging at the time, since it was necessary for him to have obtained a surety to protect him in the discharge of that obligation. That does not impress us as a reason why Falgoust would have had more interest in discharging that debt than any other debt he had with Folse in connection with any other contract, but even were that so the law which we have quoted specifically provides that in order to make the imputation apply to the debt which the debtor has the most interest in discharging, it must be of debts that are equally due. Certainly there is nothing in the record to show that Falgoust had any other debt he was most interested in discharging at the time that was not equally due as the debt on the Kemper contract. We think that the further provisions of the Article of the Code are the ones which apply directly in this case and which confirm us in the conviction that the imputation was properly made, since those provisions are to the effect that when the debts are not equally due, the payment must be applied to that which has fallen due even though less burdensome than those which are not yet payable, and further, if the debts be of like nature, the imputation is to be made to the debt which has been longest due. This is exactly what was done by the plaintiff in this case, and it follows that this defense urged by the bonding company must also fall.

 The district judge disallowed the attorneys' fees on the ground that plaintiff had not recovered the full amount claimed by him. The difference between the amount claimed and the amount of the award is only $9 which evidently is due to errors in the amount of the credits which Falgoust was entitled to. The difference is small but nevertheless it is sufficient to deprive plaintiff from recovering the 10% attorneys' fees as provided for in a suit against the surety on any bond, under Act No. 225 of 1918. After making it the duty of every surety on a bond to pay such a fee in case of suit, it is nevertheless provided that such fee shall be recoverable only "where the full amount claimed by the suitor is recovered." See Townsend v. Atterberry et al., 171 La. 885, 132 So. 411.

As we find the judgment appealed from to be correct in every respect, the same is hereby affirmed at the costs of the appellants.