TALIAFERRO, Judge.
The defendants appealed from, judgment herein in favor of the plaintiff, as by it prayed.
The learned judge a quo supported his judgment by lengthy, sound, written reasons, which are in the record. Therein he clearly paraphrased the pleadings, defined the issues, and made correct factual findings. After careful study of the testimony and the documentary evidence adduced, we find ourselves wholly in accord with the judgment rendered by him, and have decided to adopt the reasons therefor as our own. They are as follows, viz.:
“H. R. Hayes', doing business as Lumberman’s Supply Company, of Ouachita Parish, Louisiana, brings suit for judgment in solido in the amount of $1,325.38 against R. J. Jones & Sons, composed of R. J. Jones, R. H. Jones and James E. Jones, of Rapides Parish, Louisiana; Willie W. Lasyone of Winnfield, Winn Parish, Louisiana; State of Louisiana, Department of the Military, a corporation political entity of the State of Louisiana; and Maryland Casualty Company, an, out of the State insurance company, duly authorized to do business in the State of Louisiana.
“Plaintiff alleges that R. J. Jones & Sons was the general contractor with the State of Louisiana, Department of the Military, on March 4, 1949, recorded in Book 27, page 528 of the mortgage records of Winn Parish, for the construction of an armory building in Winnfield, Parish of Winn, and that said contract was bonded by surety bond of the Maryland Casualty Company. Willie W. Lasyone of Winnfield was a subcontractor of R. J. Jones & Sons to perform the labor and furnish materials, equipment and supplies for the plumbing of said armory, and plaintiff made a bid for the price of the materials to be furnished, which was. accepted by said Lasyone.
“Plaintiff furnished and delivered the-materials to be used in constructing the plumbing work. This material was partly delivered by plaintiff on truck from Monroe to the site of the building in some instances, and to the shop of Willie Lasyone in the Town of Winnfield in other instances, and by railroad direct from the factory for back orders not in stock at the time the material was sold by plaintiff; that the work was completed and the said Lasyone having failed to pay plaintiff’s claim lien and privilege as provided by law was filed and recorded and notices thereof given to defendants, and hence plaintiff seeks to. obtain judgment in the amount claimed for the work constructed under the contract with R. J. Jones & Sons with legal interest, and 10 per cent on the amount of principal and interest as attorney’s fees and all costs-of suit.
“Defendants, R. J. Jones & Sons, answered the demands of plaintiff, which, is. in effect a denial of the allegations of plaintiff’s petition. They specially deny that plaintiff sold or delivered to Willie W. Lasyone at his place of business at Winn-field or the job site at the armory building in Winnfield the materials to ibe used in the construction of the plumbing work.
“Defendants further allege that all of the plumbing equipment and supplies used by said Lasyone were of standard brands and' that said Lasyone purchased and acquired such materials and supplies from other wholesalers and placed them in his stock which were used by said Lasyone in doing the plumbing work on the armory.
“They finally say that R. (J. Jones & Sons supplied Lasyone the plumbing materials and supplies from its own warehouse in the City of Alexandria for use and consumed in said job to the extent of $1,268.90 as shown by itemized statement furnished counsel for plaintiff.
“The State of Louisiana, Department of the Military, also answers plaintiff’s de *855 mands by adopting the answer filed by R. J. Jones, R. H. Jones and James E. Jones, individually, and Maryland Casualty Company in their answer to paragraphs I, 2, 3, 4, S, 6, 7, 8, 9, 10, 11, 12, 13, and 14 as fully and completely as if repeated word by word, and paragraph by paragraph.
“State of Louisiana, Department of the Military, further answered the demands of plaintiff by alleging that R. J. Jones & Sons was paid in full the contract price upon the completion of the armory building, and that the Maryland Casualty Company was the bondsman who guaranteed State of Louisiana, Department of the Military, against any losses it might sustain and reserves all of its legal rights against R. J. Jones, R. H. Jones and James E. Jones, individually, and Maryland Casualty Company in the event plaintiff should be awarded any judgment upon its claim.
“Defendant, Willie W. Lasyone, likewise answers plaintiff’s petition, in which he admits that he was plumbing subcontractor on the construction of the armory building in Winnfield and that he purchased the materials for this job from plaintiff, but denies that all of said materials were used in the plumbing work done on said building. The answer is also in effect a general denial. He further avers that on 'January 26, 1950, he filed a voluntary petition of bankruptcy and listed the accounts of H. R. Hayes, doing business as Lumbermen’s Supply Company, Monroe, Louisiana, for plumbing supplies in the amount of $7,509.56, which amount included $1,325.38 claimed by plaintiff for the special job in question, and that he is fully discharged from any obligation.
“Upon these issues the case went to trial, and after hearing the testimony the case was carried over to be submitted by counsel on briefs, and because of conditions for which no one is responsible the filing of the briefs have (sic) been delayed until recently.
“The facts show by evidence in the record that the contract between the State of Louisiana, Military Department, and R. J. Jones & Sons was reduced to writing and properly filed and recorded together with a bond of Maryland Casualty Company, surety, guaranteeing the faithful performance of said contract, and that Willie W. Lasyone was awarded the contract to do the plumbing work in the construction of the building.
“Lasyone went to plaintiff in Monroe with whom he had done quite a lot of business requesting that plaintiff submit a price of materials necessary to be used in the plumbing work, which they did, and which price was accepted by Lasyone. They knew that he had this contract and was willing to furnish the materials on the contract for use in the building, but had previously declined to extend said Willie W. Lasyone further credit on the account he owed them at the time he saw them about furnishing this material; and as the material was billed out and delivered, the bill of lading for each shipment shows it was being delivered for the National Guard Armory at Winnfield, Louisiana.
“Some of the material was delivered at the armory site and other of the material was delivered at the shop, a place of business owned by Willie W. Lasyone, and kept separate from the general stock. However, Lasyone contends the work was revised, after which1 he placed a part delivered to his shop in his stock and used it from the general stock, but the plumber who did the work and signed receipts for the delivery of most of the material says the fixtures and some of the material were delivered at the armory site and that portion delivered at the shop was kept separate from the general stock of Lasyone and he took merchandise from the separate stock and used it in constructing the work in the armory building in addition to the use of the material left at the armory.
“The testimony of all witnesses admit, however, that the fixtures such as hot water tanks, shower cabinets, toilets, bowls and lavatories were used in the armory job and that many of the materials, if not all of them, sold by plaintiff were likewise used in the armory job; that the estimate made after the building was completed shows more than $1,100.00 of the materials sold by plaintiff were used in the armory work.
*856 “Defendant, R. J; Jones & Sons, filed statements showing that they furnished to Laysone during the time he was constructing the plumbing work on the armory building in the amount of $1,268.90, but the evidence does not show that this material or any part of it was used in the construction of the work which Lasyone was obligated to do. On the contrary, the testimony of Lasyone is to the effect that none of the materials sold and delivered to him by R. J. Jones & Sons was used in constructing the plumbing in the armory building.
“Therefore, defendant, R. J. Jones & Sons, while making th¿ allegation in their answer have offered no proof to show that this material which they sold and delivered to Lasyone was used in the construction of the work of plumbing the armory building. There is no evidence in the record to show that any material used by Lasyone in the plumbing work in the armory building was sold to him by any person other than plaintiff further than the statement that Lasyone made as a witness that some of the material furnished by plaintiff was placed in his general stock and from his general stock of material he took what was necessary to do the plumbing job for the armory.
“Therefore, the only proof to guide the Court relative to the material furnished in doing the plumbing work for the armory preponderates in favor of the fact that most of the material, if not all of it, furnished by plaintiff was used by Lasyone in the construction of the plumbing job for the armory.
“Defendants in their argument cite the Court the case of Patterson v. Lumbermen’s Supply Co., Inc., La.App., 167 So. at page 471, in support of their claim that the plaintiff’s demands should be rejected. We have carefully studied the case and find that shingles were sold by Lumbermen’s Supply Company to Bastrop Lumber and Supply Company who was furnishing plaintiff in that case material for repairing his residence. It seems that Bastrop Lumber and Supply Company did not have the shingles plaintiff desired to use but purchased them from Lumbermen’s ' Supply Company and then sold and delivered them to plaintiff which he used in covering his residence. In other words, defendant in that case sold its goods to plaintiff’s fur-nisher of material and not direct to plaintiff, and the Court held this being true, Lumbermen’s Supply Company had no lien on the building and lot to secure payment of the price that was due them by Bastrop Lumber and Supply Company. In support the Court quotes the following from Woodward v. American Exposition Railway Company, 39 La.Ann. 566, 2 So. 413.
“ ‘A party whose materials sold to another are used in the construction. of a work, has no privilege on such work, because his materials were not sold to the owner or his agent or his sub-contractor.’
“The facts in that case are not applicable to the question involved in the suit being considered as we understand and appreciate the facts of both cases.
“R. J. Jones & Sons were the contractors with the State of Louisiana, Department of the Military, and Willie W. Lasyone was a .sub-contractor to do the plumbing work. The materials sold by plaintiff in this case were sold direct to the sub-contractor and the only question involved is whether or not the materials sold were used by Willie W. Lasyone in doing the work under his subcontract on the armory being constructed in Winnfield.
“We think the testimony preponderates in favor of the fact that all or most of all the materials sold by plaintiff to Willie W. Lasyone were used in the construction of the work done by the plumber on the armory building, and in line with the law and jurisprudence of this State plaintiff is entitled to recover the full amount of his claim.
“It would be impracticable to require a seller of material to follow up each item of the material and know of a positive fact that each piece went into the building for which the material was being sold. Therefore, the law recognizes ■ that even though some small part of the material 'had not been used, still the seller of the material to a contractor acting in good faith who delivers same to the site of the work is not *857 required to follow the transaction to the ultimate and see such material is actually so used or consumed, as a condition precedent to the efficacy of the lien provided by law.
“In the case of Deribes v. Marshall et al [La.App.], 183 So. page 74 [76], the Court considered that question in the following language:
“ ‘The testimony leaves- no doubt that the material involved herein was delivered by plaintiff on Peterson’s orders to the buildings described in the written contract. Each delivery was receipted for by someone on the job. It is equally well established that the said material was consumed in the improvement of said buildings. But if it had been shown that some part of this material had not been consumed on said buildings, defendant’s position would not have been improved thereby. A seller of material to a contractor, acting in good faith, who delivers same to the situs Where such material is intended to be and should be used, is not required to follow the transaction to the ultimate end of seeing that such material is actually so used'or consumed, as a condition precedent to the efficacy of the lien provided by law. To so require would be unreasonable. It would impose upon materialmen a burdensome duty which alone should foe absorbed by the owner. -The negative of defendant’s contention has been generally held. Schreiber v. Edgar et al., 168 La. 443, 122 So. 285; Haynesville Lumber Company v. Casey, 165 La. 1065, 116 So. 559; Graphic Arts Building Company v. Union Indemnity Company, 163 La. 1, 111 So. 470; Bell v. Mecum, 75 N.J.L. 547, 68 A. 149, 127 Am.St.Rep. 809; 18 Ruling Case Law, 920.’
“Most of the material was received by witness Loo-per at the site of the job and the reason given for receiving a part of the shipment at the place of business of Lasy-one was that when it was delivered the job had not begun sufficiently for the material to be left at the place.
“Also in the case of Folse v. Maryland Casualty Co., La.App., 193 So. 385, in considering the same question, the Court said:
“‘Besides, it has been held that'the fur-nisher of material is not required to follow his shipment or delivery and see that it actually goes into the construction of the ■building. Graphic Arts Bldg. Co. v. Union Indemnity Co., 163 La. 1, 111 So. 470. That decision also holds that the liability of the surety company on a bond of this character is co-equal -with that of the contractor and seems to dispose of both the first two defenses urged by the bonding company.’
“Hence, we think the facts and the law both support the right of plaintiff to recover, and judgment is rendered recognizing plaintiff’s right to recover from R. J. Jones & Sons, State of Louisiana, Department of the Military, and Maryland Casualty Company, in solido, the full amount of $1,325.38 with legal interest thereon from January 18, 1950, until paid, together with 10 per cent upon the amount of principal and interest as attorney’s fees, and for all costs of this suit. That the rights against R., J. Jones & Sons and the individual:members thereof foe reserved to State of Louisiana, Military Department.”
And, for the reasons herein assigned, the judgment from which appealed, is now affirmed at appellants’ cost.
KENNON, J., not participating.