REID, Judge.
This is a suit by a furnisher of material against a contractor’s and sub-contractor’s surety to recover the cost of supplies provided for construction of a public building.
Plaintiff, Levingston Supply Company, Inc., was the furnisher of materials to Vince Mechanical Contractors, Inc., subcontractor under a contract dated December 22, 1959, between the State of Louisiana Department of Hospitals, as Owner, and Albert D. Kendrick, as General Contractor, for the construction of the Receiving and Rehabilitation Building at the East Louisiana State Hospital at Jackson, Louisiana. Vince Mechanical Contractors, Inc. agreed to provide all plumbing and heating work specified in the general contract and to furnish all labor and materials in connection therewith. Travelers Indemnity Company was the surety for Albert D. Kendrick and Home Indemnity Company was the surety for Vince Mechanical Contractors, Inc.
Plaintiff alleges it sold plumbing supplies and materials totalling $2684.42 to Vince Mechanical Contractors, Inc. between March 8, 1960 and May 8, 1960 specifically for this hospital job and each invoice was marked for this job. Plaintiff alleges its account became due June 1, 1960, and it filed its sworn statement of its claim with the Department of Hospitals by letter of August 31, 1960, and also recorded it in the mortgage records of the Parish of East Feliciana on August 12, 1960. Plaintiff further alleges it made written demand on the Contractor, the Sub-Contractor, and the two surety companies, by letter of its attorneys dated August 31, 1960; more than 30 days had elapsed since such demands were received by said parties; the account had not been paid; and under the law plaintiff was entitled to an additional 10% on the amount of both principal and interest.
The defendants filed a general denial, but admitted the existence of the contract *922 and the subcontract and admitted Travelers Indemnity Company was surety for the Contractor and Home Indemnity Company was surety for Vince Mechanical Contractors, Inc., the Sub-Contractor.
The Trial Judge, for written reasons assigned, rendered a judgment in favor of plaintiff and against the defendant bonding companies in the amount of $2684.42, together with interest and 10% additional on the amount of principal and interest as attorneys’ fees. From that judgment this appeal has been taken.
The issue involved herein concerns whether the supplies sold by the plaintiff to the sub-contractor were actually delivered to the job site and if so, whether the materials went into the construction of the building for which they were intended.
There is no contention that the supplies were not sold by plaintiff, Levingston Supply Company, Inc., to the Sub-Contractor, Vince Mechanical Contractors, Inc., and there is no question as to the price, quantity or quality of the goods sold.
The facts clearly show that with the exception of a few items sent directly to the job site, the bulk of the materials were delivered by plaintiff to the Sub-Contractor’s warehouse in Baton Rouge or were shipped directly to the Sub-Contractor’s warehouse in Baton Rouge by the manufacturer on order from the plaintiff. At the trial plaintiff introduced in evidence its invoices and delivery tickets showing delivery of the materials to the Sub-Contractor at his warehouse.
Mr. Anthony Joseph Graphia, III, who at the time the materials in question were delivered to the Sub-Contractor was the purchasing and expediting agent for Vince Mechanical Contractors, Inc., testified that he ordered all of the items involved in this law suit from plaintiff and they were delivered to the Sub-Contractor’s warehouse for the hospital job. He said there was a take-off by an estimator for the materials needed on each job performed by the SubContractor, a copy of which was given to him as purchasing agent. He further testified the warehouse under his supervision signed delivery tickets on each delivery and certain areas were set aside in the warehouse where the materials for each job were placed. Each job was given a number and this job was given No. 450. Mr. Graphia testified all items which came in were checked by him or his warehousemen and they were either put in bins for future delivery or loaded on trucks for delivery to the job site. Mr. Graphia identified plaintiff’s invoices introduced in evidence and testified this material went to the job site. He further testified he had no information whatsoever that the materials were not actually delivered to the job site and no foreman made a complaint for failure to receive the materials which, he testified, would have happened if the materials had not been delivered. On cross examination he did admit at times they had as many as 25 or 26 jobs under process at one time and it was possible there could be some intermingling of materials and in case of an emergency items purchased for one job would be shifted to another job, but testified this seldom happened. When asked if he knew of his own knowledge that every one of the items listed in Exhibits P-1 through P-10 which were ordered from Levingston were actually delivered to the job, he said:
“A: Let’s put it like this: I’m going to verify that these purchase orders written here was typed by myself, that these approvals for payment were checked by myself, that these items supposedly purchased off this purchase order for the job was for the job. and, as to my knowledge right now, did go to the job.”
Eural Thomas, a warehouseman for Vince Mechanical Contractors, Inc. testified that he knew of his own knowledge that all of the materials involved in the job left the warehouse for the job because he helped load most of the material on the *923 Sub-Contractor’s trucks, but lie could not testify the materials arrived at the job site. He did testify he had seen some of the valves in question on the job site.
Mr. Clifton E. McKey, who at the time was supply man and assistant purchasing agent, testified as to the procedure for Tiandling materials as outlined by Mr. Graphia. He also identified the invoices and some of the delivery tickets which were signed by him. He testified he personally delivered the material itemized on the delivery ticket designated as Exhibit P-5-A to the job site.
Mr. William E. Brooks, Superintendent for Vince Mechanical on the job in question, testified all of the material listed on the estimating sheet was on the job site and that when he left the job, when it was ■shut down on August 2, 1960, all of the materials needed to complete the job were on hand at the job site.
Defendants relied primarily on the following facts for the defense that the materials had not been delivered to the job site nor incorporated in the building.
There was evidence to show that after the job was shut down someone broke into the storage shack and removed all of the material, but there was uncontradicted testimony that Mr. Vince himself returned part of the material to the shack and the Trial Judge held this was immaterial since the goods had been delivered to the site.
In attempting to show that all of the material in question had not been incorporated into the building, the defendants produced ■as a witness Mr. Charles W. Hogg, Jr. Mr. Hogg was an employee of J. F. Naylor & ■Company, the plumbing contractor which took over and completed the plumbing subcontract after Vince defaulted. Mr. Hogg testified the plans and specifications called for six 3" phlange gate valves, that such valves were not on the job and Naylor had ■to buy them. However, Mr. Hogg testified •he did not go to the tool shed and check to see if the valves in question were there. He said there was a number of other valves and equipment piled up in the storehouse four or five feet high.
Mr. William E. Brooks, however, testified after the case was first tried he went back to the Receiving and Rehabilitation Building at Jackson at the request of plaintiff and inspected to see how many three inch phlange gate valves had actually been installed. He located five of such valves which still had a tag tied to each. Each tag was covered with the same paint used to spray the valves. He signed each tag for identification and later removed enough of the paint to show that the tags were from Crane & Co., the manufacturer from whom Levingston purchased the valves. From the testimony of one of Levingston’s employees, these tags by the numbers thereon were shown to be and identified as being sold by Levingston to Vince for this hospital job. Mr. Brooks’ testimony in this regard was corroborated by Mr. Hugh F. Ryan, an outside salesman for plaintiff. In an effort to contradict the testimony of Mr. Brooks, the defendants stated that the date on the tags which referred to a purchase order of that same date, indicated that at least one of the valves could not have been a 3" valve as the purchase order of that date showed only two 3" gate valves and thus the tags must have been for valves of a different size. However, after hearing the testimony on this point and examining the tags and the invoices, the Trial Judge was satisfied that the five 3" gate valves in place in the building at Jackson were the same five 3" valves purchased by Vince Mechanical from plaintiff.
The Trial Judge indicated it was apparent that counsel had used these 3" gate valves as a prime example of the fact that the material had not been placed on the job.
In addition, the defendants made much of the fact that plaintiff was unable to produce any of the delivery tickets made in connection with the transfer of the mate *924 rials from the warehouse of Vince Mechanical to the site, maintaining- that this failure indicated the materials were not delivered. However, it is apparent that the Trial Judge disregarded this argument and concluded from the balance of the testimony that the materials had been delivered
The question involved in this case is purely a factual one as to whether or not the materials were or were not delivered to the job site and in this regard the Trial Judge stated as follows:
“As stated in the beginning this transcript is composed of 325 pages, the Trial Judge has read every word of it, some parts of it several times and the Court is convinced from the careful examination of the testimony and the documentary offerings, that the material and supplies identified in plaintiff’s suit as sold to Vince actually were all delivered to Vince with the exception of a small amount delivered directly to job, and in turn delivered by Vince, or his employees, to the job site, the R & R Hospital at Jackson, Louisiana.
“There is a great preponderance of evidence in favor of plaintiff.”
A careful study of the record before this Court indicates the Trial Judge was not in error in this factual determination.
In addition to the question of whether or not the material was delivered to the job site, the defendants contended that as the materials had not been delivered directly to the job site but had been delivered to the warehouse and then delivered to the job site, it was incumbent upon the plaintiff to prove that all of the materials had been incorporated into the building. In regard to the jurisprudence on this subject, this Court said in the case of Levingston Supply Co. v. Aetna Insurance Co., 124 So.2d 357:
“In our opinion it appears that the law is now well settled that a materialman who timely files a lien for materials furnished to a subcontractor is entitled to recover from the surety upon proof of actual delivery of the materials to the site and he is not required to additionally prove that the materials were, in fact,, incorporated or used in the building.. Inasmuch as Plaintiff in these suits has. concededly made such proof, it is entitled to judgment. Bernard Lumber Company, Inc. v. Sayre, 230 La. 17, 87 So.2d 713; Allen B. Cambre Lumber & Supply Company, Inc. v. Loomis, La. App., 94 So.2d 908; Hortman-Salmen Co., Inc. v. Raymond et al., 13 La.App.. 490, 127 So. 452; Hayes v. R. J. Jones, and Sons et al., La.App., 56 So.2d 853; R. F. Mestayer Lumber Company, Inc. v. Tessner, La.App., 101 So.2d 238.
’ “Defendants rely on the case of Moore-Steel, Inc. v. Succession of Wright et al., La.App., 79 So.2d 118 for the contention that a materialman is burdened' with the obligation to produce satisfactory evidence to show not only that the materials sold were actually delivered to the site but to further prove that said materials were actually used in the construction of the project. It is. true that the language used in the opinion could be construed to hold that the-materialman bears the onus of proving' that the materials were actually used! in the construction of the project, however, a review of the case reveals that,, as a fact, the evidence did not show that the materials had been delivered to-the job site and in such circumstances-it was obviously impossible for the ma-terialman to show that the materials-were actully used in the project.”
Defendants under their theory of the jurisprudence would argue that this rule would apply only if the materials had been delivered directly to the job site, but not having been delivered directly to the job site plaintiff had the burden of clearly proving that the contractor later took the materials to the job site and incorporated them into *925 the building and, therefore, this case would not fall under the above quoted jurisprudence. This is not a correct interpretation of the law as handed down by this Court in Levingston Supply Co. v. Aetna Insurance Co., supra, as no distinction was made in that case as to how the delivery was made to the job.
“In our opinion it appears that the law is now well settled that a materialman who timely files a lien for materials furnished to a subcontractor is entitled to recover from the surety upon proof of actual delivery of the materials to the site * * *.” Levingston, supra. (Emphasis supplied)
Having proved delivery to the job, a supplier can recover whether or not the materials were delivered directly to the job site or to his warehouse and then delivered by him to the job. Therefore, having concluded that the Trial Judge was correct in his holding the plaintiff had proved the materials were delivered to the job, it is the decision of this Court that the judgment of the Trial Court is correct.
LSA-R.S. 38:2246 provides for 10% attorney’s fees in the event payment is not made within 30 days after receipt by the principal and the surety of amicable demand, and, therefore, the judgment of the Trial Court in awarding 10% attorney’s fees in this case is in accordance with the statute.
For the foregoing reasons the Trial Court is affirmed.
Affirmed.