557 So.2d 1131 (1990)
BOSSIER MEDICAL PROPERTIES, Plaintiff-Appellee,
v.
ABBOTT AND WILLIAMS CONSTRUCTION COMPANY OF LOUISIANA, INC., Abbott and Williams Construction Company of Texas, Inc., and Great American Insurance Company, Defendants-Appellants.
No. 21260-CA.
Court of Appeal of Louisiana, Second Circuit.
February 28, 1990.
*1132 Mayer, Smith & Roberts, Henry R. Bellamy, Shreveport, for defendant-appellant, Great American Ins. Co.
Blanchard, Walker, O'Quin & Roberts, James W. Wyche, Shreveport, for plaintiff-appellee.
Before HALL, NORRIS and HIGHTOWER, JJ.
HIGHTOWER, Judge.
In this action involving the breach of a building contract, Great American Insurance Company, surety on a contractor's performance bond, appeals an award in favor of a partnership, Bossier Medical Properties, which has answered the appeal. Finding merit in one of the surety's contentions, we amend and, as amended, affirm.

Factual and Procedural Context
On March 2, 1983, Bossier Medical Properties, a Louisiana partnership consisting of Dr. John M. Brady and Dr. Charles A. Powers, entered into a building contract with Abbott Construction Company of Louisiana, Inc. ("the contractor") for the construction of a three story medical office building in Bossier City, Louisiana. Abbott and Williams Construction Company of Texas also executed the agreement in the capacity of guarantor, and the contractor posted a performance bond with Great American as surety.
The contract provided that the construction work was to be commenced within ten days of receiving the building permit or on April 1, 1983, whichever came first. Further, the ground floor was to be ready for occupancy no later than August 1, 1983, with 150 calendar days allotted from commencement to total completion of the building. Work was not begun until mid or late July, only a few weeks before the ground floor was to be ready for occupancy. The partnership intended to lease the building to various medical tenants and, toward that objective, had secured commitments from several potential lessees before construction began.
Because the work was not completed as scheduled, tenants were unable to move into the premises as planned. On May 3, 1985, the partnership instituted suit against the contractor, the guarantor, and the surety, for damages resulting from the delay, it being alleged that portions of the office building were not ready for occupancy until March 1984. Additionally, the partnership sought attorney's fees and penalties from the surety pursuant to LSA-R.S. 22:658. Work on the building, as found by the trial *1133 court, was completed after the filing of suit. [An exception of prescription was rejected after trial on the merits.]
At trial, demands against the surety were severed from those against the other two defendants, who apparently had not received notice of trial. The partnership and surety stipulated, during the trial, that the net rental loss to the partnership (lost rent minus interest gains), caused by the untimely completion of the project, was $60,355.69. The judgment awarded: (1) $29,574.32[1] against the contractor, guarantor and surety in solido, plus legal interest; (2) $2,272.80[2] against the contractor and guarantor in solido, plus legal interest as specified in the judgment; (3) $2,957.43 against Great American Insurance Company only, representing attorney's fees of 10 percent granted pursuant to LSA-R.S. 9:3902; and (4) court costs against all three defendants in solido.
The surety, the only defendant appealing, contends that its liability under the bond does not extend to lost rental income caused by the contractor's breach. It is asserted that, interpreting the bond language fairly and reasonably, the surety simply promises to assume the expense of completing all defective or unfinished work left by the contractor, and that such items as lost rent are not contemplated by the bond provisions.
Secondly, the surety asserts that the trial court erred in awarding attorney's fees under the provisions of LSA-R.S. 9:3902, as this statute is strictly construed to allow such fees only where the full amount claimed in the demand is recovered.[3]
Answering the appeal, the partnership argues that the trial court should have awarded the attorney's fees and penalties contemplated by LSA-R.S. 22:658, rather than simply granting attorney's fees under LSA-R.S. 9:3902. It is requested that the judgment be modified to increase attorney's fees and also award penalties, all as provided in LSA-R.S. 22:658.

Discussion
Suretyship is an accessory promise by which one party binds himself to fulfill the obligation of another if the latter fails to do so. LSA-C.C. Art. 3035 (1870, Rev.1987); National American Bank of New Orleans v. Southcoast Contractors, Inc., 276 So.2d 777 (La.App. 1st Cir.1973), writ denied, 279 So.2d 694 (La.1973). The surety promises to satisfy the entire obligation, unless his agreement is otherwise limited. See Comments to LSA-C.C. Art. 3045 (Rev.1987).
Contractors' surety bonds are of two types, sometimes combined in a single bond: performance bonds, which guarantee the contractor will perform the contract; and labor and material payments bonds, which guarantee that all bills for labor and materials contracted for and used by the contractor will be paid by the surety if the contractor defaults. Congregation of St. Peters v. Simon, 497 So.2d 409 (La.App. 3d Cir.1986). The Private Works Act recognizes both performance and payment bonds. LSA-R.S. 9:4812(C)(1) and (2); Congregation of St. Peters v. Simon, supra. Obligations set forth in a bond given by a compensated surety are strictly construed in favor of protecting the obligee. Louisiana Bank and Trust Co., Crowley v. Roanoke Rice Co-op, 298 So.2d 868 (La. App. 3rd Cir.1974), writ denied, 302 So.2d *1134 35 (La.1974); Prestigiacomo v. Phoenix Insurance Co. of Hartford, 231 So.2d 431 (La.App. 4th Cir.1970); State v. Preferred Accident Insurance Co. of New York, 149 So.2d 632 (La.App. 1st Cir.1963).
In the case at hand, the trial court found the surety liable for lost rental based upon the specific language of the bond agreement. We concur in that interpretation. The pertinent portion of the bond reads as follows:
NOW, THEREFORE, the condition of this obligation is such that, if the Principal [the contractor] shall faithfully perform the work as specified in the contract on his part, and shall fully indemnify and save harmless the Obligee [the partnership], from all costs and damage which the Obligee may suffer by reason of failure to so do and shall fully reimburse and repay the Obligee all outlay and expense which the Obligee may incur in making good any such default, and shall pay all persons who have contracts directly with the Principal for labor or materials, then this obligation shall be null and void, otherwise it shall remain in full force and effect.
Thus, the surety agreed to stand liable if the contractor, upon failing to "faithfully perform the work as specified in the contract," did not fully pay the partnership for "all costs and damage which the [partnership] may suffer by reason" of the breach.
Not completing construction by the dates indicated, the contractor clearly did not "perform the work as specified." Nor, after the breach, did the contractor fully indemnify the partnership for all costs and damage suffered. As a result, the surety is called to satisfy the contractor's obligation to "fully indemnify" the partnership for "all costs and damage" suffered due to the delayed completion of construction.
Additionally, LSA-R.S. 9:4812(C)(1) and (2) mandates conditions of bonds written, as was the subject bond, in compliance with the Private Works Act. Under that statute, the surety guarantees the owner "payment of ... claims or of all amounts owed... arising out of the work performed under the contract" and "the complete and timely performance of the contract unless such guarantee is expressly excluded by the terms of the bond." (Emphasis added.)
So, under both the language of the present bond contract and also the provisions of the Private Works Act, the liability of the surety extends beyond performance of unfinished work. Of course, the surety could have limited its liability under the provisions of the contract, see LSA-C.C. Art. 3040, but did not do so.
In National American Bank v. Southcoast Contractors, Inc., supra, a contractor agreed to deliver, within a given period, a completed building free from liens, or to pay liquidated damages of $50 for each calendar day that the work remained incomplete. Per diem was awarded against the surety, even after full completion of construction, for the contractor's failure to cancel the liens. On appeal, the First Circuit concurred that a liquidated damage clause in a contract should be strictly applied, and that the surety stood liable.
While liquidated damages are not provided in the present matter, the bond language calls for the surety to pay all damage suffered. When strictly construed favorably to the obligee, that language dictates a finding of liability for lost rental payments.
Appellant cites Calandro Development, Inc. v. R.M. Butler Contractors, 249 So.2d 254 (La.App. 1st Cir.1971), for the opposite conclusion. There, after the contractor defaulted on its obligations, the court addressed the owner's right to recover from the surety for items such as interest, diminution of property value, engineering fees for corrective plans and specifications, and damage to the owner's professional reputation resulting from the contractor's default. The court interpreted the language of the subject bond to mean that the surety promised to assume only the expense of completing all defective or unfinished work to the end of assuring the owner a completed project. The court faced no issue of lost rentals, but concluded that interest, depreciation of subdivision lots, and damage to the owner's professional reputation, were unrelated to actual finishing costs and, *1135 thus, not contemplated by the bond provisions.
To any extent that it may conflict with our determination of the present case, we decline to follow Calandro. Considering the specific language as set forth in the bond contract at hand, as well as the mandates of the Private Works Act, we determine that the surety's liability to the partnership includes lost rental payments.
We do, however, agree with the surety's second contention, that the trial court erred in awarding attorney's fees under LSA-R.S. 9:3902, which provides as follows:
If the surety on a bond fails to pay his obligation and it becomes necessary for the creditor to sue thereon, the latter shall be entitled to ten (10%) percent attorney's fees on the amount recovered, provided he has employed an attorney for the purpose, has made written amicable demand on the principal and surety, and thirty (30) days have elapsed from their receipt thereof, without payment being made, and the full amount claimed in the demand is recovered.

(Emphasis added).
To recover under this statute of penal character, strict compliance with its provisions is required. See Harper v. Home Indemnity Co., 140 So.2d 653 (La.App. 2d Cir. 1962); Miles v. Fidelity and Casualty Co. of New York, 185 So.2d 613 (La.App. 1st Cir.1966), writ denied, 249 La. 477, 187 So.2d 447 (1966); Folse v. Maryland Casualty Co., 193 So. 385 (La.App. 1st Cir.1940).
The surety maintains that, if a creditor recovers less than the full amount claimed under a bond, he cannot recover attorney's fees under the provisions of LSA-R.S. 9:3902. That position is well taken. For example, in Folse, supra, the difference between the claim and the amount awarded was only $9, yet recovery of attorney's fees against the surety was refused.
The partnership claimed $141,455.51 in its second supplemental and amending petition. Notwithstanding a recovery of the far smaller sum of $29,574.32, the partnership was awarded attorney's fees. As previously stated, during the course of the trial the participants entered a stipulation that the net lost rentals amounted to $60,355.69. That stipulation, concluded the trial court, had the effect of amending the claim and, in turn, justified application of LSA-R.S. 9:3902.
We disagree. No formal amendment of the petition occurred, either orally or in writing. Nor did the partnership request leave of court to amend in accordance with LSA-C.C.P. Art. 1151. The orally entered stipulation is devoid of any reference to amending or amendments. Indeed, based on the record, the attorneys merely agreed that testimony, if taken, would establish the sum indicated as lost rent. We find no authority for the proposition that such a stipulation has the effect of amending a petition. The partnership, under a strict application of LSA-R.S. 9:3902, having neither received the full demand nor amended the petition, is not entitled to attorney's fees. In so finding, we reverse the trial court's award in that respect.
On the other hand, the partnership asserts that penalties should have been awarded under LSA-R.S. 22:658 for the surety's refusal to pay. That section imposes penalties and attorney's fees upon insurers for an arbitrary and capricious failure to pay. Counsel has extensively argued the statute's applicability to a surety agreement; however, we find it unnecessary to resolve that issue here. The trial court found that the surety was not arbitrary and capricious, and indeed acted in good faith, in contending that the claim had prescribed and sought recovery not provided by the bond.
Although the exception of prescription was ultimately overruled, one member of the partnership, corroborated by an architect, testified that substantial completion occurred on a date that would have sustained the plea. Neither can it be said that the surety acted arbitrarily and capriciously in litigating the extent of its obligation under the subject bond, especially when Calandro, supra, is considered.
*1136 LSA-R.S. 22:658, also being penal in nature, is likewise strictly construed. Its provisions are not applied absent a clear showing that an insurer was arbitrary, capricious and without probable cause in refusing to pay. McClain v. General Agents Ins. Co. of America, Inc., 438 So.2d 599 (La.App. 2d Cir.1983), writ denied, 442 So.2d 458 (La.1983). Of course, it is well established that a trial court's finding of fact may not be set aside on appeal in the absence of manifest error or clear wrongness. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), on remand, 370 So.2d 1262, (La.App. 3rd Cir.1979), writ denied, 374 So.2d 660 (La.1979); Canter v. Koehring Co., 283 So.2d 716 (La.1973); Kennedy v. Bearden, 471 So.2d 871 (La.App. 2d Cir. 1985); Brents v. Gulf Ins. Co., 465 So.2d 860 (La.App. 2d Cir.1985), writ denied, 469 So.2d 984 (La.1985).
In the case at bar the trial court's finding, that the surety acted in good faith in denying the claim and maintaining its defense, is not manifestly erroneous.
Based on the foregoing, we amend the judgment to delete the award of LSA-R.S. 9:3902 attorney's fees. The remaining portions of the judgment are affirmed, all at appellant's, the surety's, cost.
AMENDED AND, AS AMENDED, AFFIRMED.
NOTES
[1] In addition to stipulated lost rental income, the trial court awarded $6,000 for additional architect's fees, and $30,005.76 for lien claims paid by the partnership, and then granted a credit of $60,355.69 for sums owed to the contractor for work performed.
[2] The contractor and guarantor, not being parties to the rent-loss stipulation, were cast in judgment for an additional $2,272.80 when the matter later proceeded to trial against them. Neither of those defendants appeared for that subsequent trial, nor have they appealed.
[3] A third issue raised by the surety for purposes of clarification is the trial court's mention, in its opinion, of a stipulation as to attorney's fees in the amount of $6,000. The surety asserts that this stipulated amount was in actuality additional architect's fees. Because appellee concedes this issue in brief, we conclude that the parties understood the stipulation to refer only to additional architect's fees.