I ¡.GONZALES, J.
This case involves an attorney, Vincent DeSalvo, who guaranteed loans to his clients obtained through a finance company, Certified Finance, Inc. In this case the loan was not repaid, so Certified Finance sued both Marty Bates, the borrower, and Mr. DeSalvo, the guarantor. Mr. Bates failed to answer the suit and Certified Finance obtained a default judgment against him. Mr. DeSalvo answered the suit and the case went to trial.
According to the initial agreement between Mr. DeSalvo and Certified Finance, Mr. Bates was to be given $600 each month for 12 months.[1] Mr. DeSalvo, on September 28, 1992, signed a continuing guaranty. A second continuing guaranty was signed by Mr. DeSalvo the same day and both were mailed to Certified Finance.
Under the scheme used by Certified Finance, each month Mr. Bates was given a new loan with precomputed interest. When a new advance was made to Mr. Bates, Certified Finance used the Rule of 78’s in such a manner that, although Mr. Bates received only a total of $8,447.06 in cash from Certified Finance, the debt was rolled over into a new loan every month, with more fees and insurance premiums tacked on each month, so that at the time of trial, Certified Finance claimed the payoff balance totaled $55,320.89.
After trial, the court found that Mr. DeSalvo was liable to Certified Finance in the amount of $14,400 for two guaranties, each of which guaranteed loans to Mr. Bates up to $7,200. Certified Finance appealed that judgment, and makes the following assignments of error.
1.The District Court committed legal error in finding that the continuing guaranties and client loan form were ambiguous.
2.The District Court committed error in applying Louisiana Civil Code article 2056 (standard-form contracts) rather than the general code articles on the interpretation of the contract.
Mr. DeSalvo answered the appeal, and makes the following assignments of error.
|31. The trial court erred in considering any evidence in determining DeSalvo’s liability other than the language of the Continuing Guaranty that he signed.
2. The trial court erred in allowing Certified Finance to collect any monies in light of their business practices, which the trial court found as a matter of fact and law to be unconscionable.
3. Alternatively, the trial court erred in awarding any sums in excess of $7,200 against DeSalvo.
CERTIFIED FINANCE’S ASSIGNMENTS OF ERROR NOS. 1 AND 2 AND MR. DESALVO’S ASSIGNMENT OF ERROR NO. 1
In assignment of error number one, Certified Finance argues that the court erred in finding the documents ambiguous. In assignment of error number two, Certified Finance argues that the trial court erred in applying Civil Code article 2056 to construe the documents against Certified Finance. In Mr. DeSalvo’s assignment of error number one, he argues that in determining his liability, the trial court erred in considering any evidence other than the language of the continuing guaranty that he signed.
The “Client’s Loan Form” is a document in the form of a letter from Mr. DeSalvo to Certified Finance, preprinted with blanks to fill in. This form was provided to Mr. DeSalvo by Certified Finance. This document, dated September 28, 1992, states, in pertinent part (handwritten portions are italicized in this opinion):
“Please loan my client(s), Monty Bates $600 per month for 12 months the amount of 7,200.00 under your custom *689 ary terms. I personally guarantee full payment of this (these) loan(s), plus interest and expenses and to endorse the promissory note at a later date. Yours truly, Vincent J. DeSalvo. ”
Mr. DeSalvo never endorsed a promissory note. The two identical continuing guaranties signed by Mr. DeSalvo on the same day provide, in pertinent part:
... Guarantor does hereby give this continuing guaranty to said Creditor, his tranferees or assigns for the payment in full, together with all interest, fees and charges of whatsoever nature and kind, of any indebtedness, direct or contingent, of said Debtor to said Creditor up to the amount of: $7,200.00,_
The continuing guaranties also provide that:
... Guarantor agrees to pay upon demand, at any time to said Creditor, his transferees or assigns, the full amount of said indebtedness up to the amount of this guaranty, together with interest, fees and charges, as set forth above, becoming subrogated in the event of payment in fuE by |4Guarantor to the claim of said Creditor, his transferees or assigns, together with whatever security Creditor may hold against said indebtedness.
Louisiana Civil Code article 3038 provides, “Suretyship must be express and in writing.” Louisiana Civil Code article 3040 provides, “Suretyship may be qualified, conditioned, or limited in any lawful manner.” Louisiana Civil Code article 3044 provides, “An ordinary suretyship is one that is neither a commercial surety-ship nor a legal suretyship. An ordinary suretyship must be strictly construed in favor of the surety.”
The trial court, in its reasons for judgment, stated:
My research has disclosed that the continuing guaranty executed by Mr. DeSalvo is in the form of a surety and that suretyship law governs. With regard to that, there are several cases, namely Nicholson And Loup Inc., v. Carl E. Woodward, Inc., 596 So.2d, 374, relying on Bossier Medical Properties v. Abbott and Williams Construction Company of Louisiana, Inc., 557 So.2d, 1131. Those cases stand for the principle that a suretyship contract binds the surety to satisfy the principal of the entire obligation, unless that suretyship contract is limited.
Jurisprudence also discloses that sure-tyship contracts are subject to the same general rule as a contractual interpretation and Civil Code article 2056 requires that any ambiguity in a contract must be interpreted against the party drafting the contract. The law is also that sure-tyship must be expressed and in writing.
So I think the decision in this case is bound by what is contained in the document signed by Mr. DeSalvo. I believe the continuing guaranty document is the controlling document but I think even if it is reviewed together with the client loan form, the result would be the same.
The continuing guaranty provides that the guarantor is giving this continuing guaranty to the creditor with a payment in full, together with all interest, fees and charges of whatsoever nature and kind, up to the amount of, and then an amount is filled [in] and in this case it was $7,200.00. Now that guaranty does provide later on, as Mr. Aguillar points out, that the guarantor agrees to pay the full amount of said indebtedness, up to the amount of this guaranty, together with interest fees and charges, as set forth above.
5{; * :¡: * * %
The law on suretyship is, on an ordinary suretyship such as this that the documents are to be interpreted in favor of the surety.
Based on that jurisprudence, I find that the most that Mr. DeSalvo guaranteed was $7,200.00 on each continuing guaranty.
*690 | BAfter a thorough review of the record and the jurisprudence, we cannot say that the trial court erred in concluding that Mr. DeSalvo only guaranteed the amount of $7,200 on each of his continuing guaranties.
MR. DESALVO’S ASSIGNMENT OF ERROR NO. 3: THE TWO CONTINUING GUARANTIES
As a general rule, parol evidence is inadmissible to vary, modify, explain, or contradict a writing. Belle Pass Terminal, Inc. v. Jolin, Inc., 92-1544, 92-1545 (La.App. 1st Cir. 3/11/94), 634 So.2d 466, 479, writ denied, 94-0906 (La.6/17/94), 638 So.2d 1094. When the terms of a written contract are susceptible of more than one meaning, or there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed, or fraud is alleged, parol evidence is admissible to clarify the ambiguity, show the intention of the parties, or prove fraud. In cases in which the contract is ambiguous, the agreement shall be construed according to the intent of the parties. Intent is an issue of fact which is to be inferred from all of the surrounding circumstances. Any doubtful provisions must be interpreted in light of the nature of the contract, equity, usages, the conduct of the party before and after the formation of the contract, and other contracts of a like nature between the same parties. Borden v. Gulf States Utilities Company (La.App. 1st Cir.), 543 So.2d 924, 927-928, writ denied, 545 So.2d 1041 (La.1989). (Citations omitted.)
The trial court determined that the continuing guaranties were ambiguous. Thus, it was appropriate for the trial court to look at the intent of the parties in having two identical guaranties which were signed on the same day. Mr. DeSalvo testified that Mr. Easterling, the president of Certified Finance, did not request a second guaranty, and that it was sent to Certified Finance by mistake. Mr. DeSal-vo testified that he signed the first continuing guaranty, which was left on the desk of his law partner, Jack Harris, to be notarized. When Mr. Harris did not return to work that day, a second guaranty was brought to a second person for notarizing. Then, when Mr. Harris returned to work, he found the guaranty on his desk, notarized it, and both were mistakenly mailed out.
IfiMr. Easterling, on the other hand, testified that while he did not request the second continuing guaranty, Mr. DeSalvo called and told him he was sending a second continuing guaranty because the case would take longer than one year. Mr. DeSalvo testified that he never called Mr. Easterling to tell him he was sending a second continuing guaranty and that he had no reason to sign a second continuing guaranty on the same day.
The trial court found in its reasons for judgment:
Now there is a dispute over why there was a second continuing guaranty but I believe, again, based on a strict interpretation of the law that it must be expressed and in writing. The actual reason for the second guaranty is not important, but I find that the plaintiff was entitled to rely upon that second guaranty.
We find that, under the circumstances, where two identical, ambiguous guaranties were signed on the same day, the court erred in not determining the reasons why a second guaranty was in existence.
Mr. Easterling testified that Certified Finance never asked Mr. DeSalvo for a second guaranty. Under the circumstances, Mr. DeSalvo’s explanation that two guaranties were sent by mistake is the most logical explanation.
Therefore, we find that the trial court committed legal error in determining that Mr. DeSalvo was liable for both guaranties, in the amount of $7,200 each, rather than just for one guaranty in the amount of $7,200.
*691 MR. DESALVO’S ASSIGNMENT OF ERROR NO. 2: THE UNCONSCIONABLE ISSUE
In his assignment of error number two, Mr. DeSalvo argues that the trial court erred in allowing Certified Finance to collect any monies from Mr. DeSalvo in light of their business practices being found “unconscionable” by the trial court. Louisiana Revised Statute 9:3551 provides:
With respect to a consumer credit transaction, if the court as a matter of law finds the agreement or any clause of the agreement to have been unconscionable at any time it was made the court may refuse to enforce the agreement, or it may enforce the remainder of the agreement without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result; provided, however, for the purposes of this chapter, an agreement; clause, charge or practice expressly permitted by this chapter or any other law or regulation |7of this state or of the United States or subdivision of either, or an agreement, clause, charge or practice necessarily implied as being permitted by this chapter or any other law or regulation of this state or the United States, or any subdivision of either is not unconscionable. (Emphasis added.)
Louisiana Revised Statute 9:3535 provides:
An extender of credit shall not divide a consumer credit transaction into multiple agreements for the purpose of obtaining a higher credit service charge or loan finance charge than would otherwise be permitted by this chapter.
The testimony of Mr. Easterling establishes that he apparently interpreted La. R.S. 9:3535 to mean the finance company could not make more than one loan at a time to Mr. Bates, hence, each month a new loan was made and the old loan was paid off. However, the practice utilized by Certified Finance to roll the old loan into a new loan each month, while tacking on new fees and insurance payments each month and continually increasing the principal amount borrowed, seems to be exactly the sort of practice which La.R.S. 9:3535 was designed to prevent.
However, the trial court was not required to invalidate the entire contract under La.R.S. 9:3551. In response to a solicitation letter sent to Mr. DeSalvo and numerous other attorneys, Mr. DeSalvo called Mr. Easterling at Certified Finance to inquire about loans for his clients. Mr. Bates received $8,447.06 in cash from Certified Finance, and Mr. DeSalvo signed a continuing guaranty so that his client could get a loan. Although Mr. DeSalvo claimed at trial he had no idea what interest rate was being charged to his client, and did not read the disclosure statements, the loan disclosure statements were mailed to him each month when a new loan was made on his client’s behalf. Further, Mr. DeSalvo’s testimony established that, with his other clients who obtained loans from Certified Finance, he refused to pay the full amount owed to Certified Finance under its rollover loan scheme. In each of those cases he convinced Certified Finance to settle for a lesser amount out of the proceeds of his clients’ cases.
Under these circumstances, we find no error by the trial court in declining to invalidate the entire contract.
|sFor the foregoing reasons, the trial court judgment is AMENDED to reduce the award to Certified Finance from $14,-400 to $7,200; and the judgment is AFFIRMED AS AMENDED. Costs are to be assessed against Certified Finance.

. We note that the monthly payment amounts were later changed.