497 So.2d 409 (1986)
The CONGREGATION OF ST. PETER'S ROMAN CATHOLIC CHURCH OF GUEYDAN, Plaintiff-Appellant,
v.
Ernest SIMON, et al., Defendants-Appellees.
No. 85-1178.
Court of Appeal of Louisiana, Third Circuit.
November 5, 1986.
*410 Joseph J. Piccione, Lafayette, for plaintiff-appellant.
Edward G. Saal, Jr., Gueydan, for plaintiff-appellee.
Nicholas Sigur, McBride and Foret, Robert R. McBride, Lafayette, Cecelia B. Bonin, New Iberia, for defendants-appellees.
Before DOMENGEAUX, YELVERTON and KNOLL, JJ.
YELVERTON, Judge.
The issue in this appeal is whether the right of action of the obligee against a surety on a subcontractor's performance bond is extinguished by the prescription of one year under the Private Works Act. The trial court after a trial on the merits maintained the plea of prescription and dismissed the action. We reverse. We find that the performance bond here was not a statutory bond governed by the Private Works Act, but a conventional contract of suretyship accessory to a subcontract for the construction of a building on immovable property. Causes of action against the contractor for defective construction of a building on immovable property prescribe in ten years. The present action was filed within ten years and the plea of prescription should have been overruled.
By dismissing the case on prescription, the trial court never reached the merits. We need not remand, however, as the complete record is before us and we can decide it. Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975). We will do so after first explaining the series of events that eventually focused the dispute on the subcontractor's performance bond, and our reasons for holding that the obligee's suit against the surety is not prescribed.

FACTS
The dispute grew out of a construction contract executed in January 1969. The Congregation of St. Peter's Roman Catholic Church of Gueydan, Louisiana, contracted with the partnership of Ernest Simon & Son (Simon) to build a church.
Simon subcontracted the roof to Gene W. Latiolais, d/b/a Latch Bonded Roofing & Sheet Metal Company (Latch). The subcontract provided that Latch would furnish all material and perform all work necessary to complete the roof according to the plans and specifications of the contract between *411 St. Peter's and Simon. The amount of the subcontract was $21,280.
Latch, as principal, furnished both a performance and a payment bond to Simon, with United States Fidelity & Guaranty (USF & G) as surety, the performance bond being conditioned on Latch "well, truly and faithfully" performing all the obligations assumed by him in the roofing subcontract.
Construction on the church building began and was completed in 1969. Latch ran into labor problems and had to call on another roofing contractor for help. The roof was nevertheless installed and in late 1969 a formal act of acceptance of the building was recorded.
Thereafter, and continuing for a number of years, the roof leaked and St. Peter's called upon Simon to make good the construction of the roof, to stop the leaks, and to repair certain damages caused to the interior of the church. Some work was done but the problems were never completely corrected and, in 1978, the church filed a suit for damages for breach of contract against Simon. Simon brought a third party action against USF & G, the surety on Latch's subcontract.
After these pleadings were filed the main demand was settled, with Simon paying $10,000 and one-half of the court costs to St. Peter's, and USF & G, in its separate capacity as Simon's liability insurer, likewise paying $10,000 and the other half of the court costs. (USF & G was both the liability insurer of Simon and the performance bond surety of Latch.) That settlement left at issue only the third party demand between Simon and USF & G in its capacity as the surety on Latch's subcontract. To this third party demand USF & G filed an exception of prescription of one year. This is the exception which was referred to the merits and maintained by the trial court, the ruling which we here reverse.

PRESCRIPTION
On February 7, 1969, USF & G issued a bond with Latch as principal, as follows:
"Know all Men by these Presents, That Jean W. Latiolais d/b/a Latch Bonded Roofing and Sheet Metal Company of New Iberia, La. (hereinafter called the Principal) and UNITED STATES FIDELITY AND GUARANTY COMPANY,..., are held and firmly bound unto Ernest Simon & Son, General Contractor, Lafayette, La., and to all subcontractors, journeymen, cartmen, truckmen, workmen, laborers, mechanics and furnishers of labor and materials jointly as their respective interests may arise, (hereinafter called the Obligee), in the full and just sum of Twenty-One Thousand, Two Hundred & Eighty Dollars, ...
* * * * * *
"The Condition of the above Obligation is Such, that if the Principal shall well, truly and faithfully perform all the obligations assumed by him in the contract made on 1/24/69, wherein said Principal agrees to Furnish Labor and Materials for Roofing and Sheetmetal on the St. Peter's Catholic Church in Gueydan, La. in accordance with the terms of said contract, hereto attached and made a part hereof, and shall faithfully, truly and promptly pay the claims and wages of all subcontractors, journeymen, cartmen, truckmen, workmen, laborers and mechanics employed by him or by his subcontractors on said work, and shall faithfully, truly and promptly pay the claims of all furnishers of material actually used in the erection and construction of said improvements jointly as their interests may arise, then this obligation to be null and void; otherwise to remain in full force and effect."
The trial court found that this bond was executed pursuant to the Private Works Act, LSA-R.S. 9:4801 et seq., and that suit on the bond was subject to the time limitations found in the act. It said:
"The Court finds that the facts establish that the bond was indeed a Private Works Act Bond, thus meeting the requirements of LSA R.S. 9:4822. Under the Act a claim must be filed within sixty *412 days of filing a notice of termination of work or the substantial completion or abandonment of work. See La. R.S. 9:4822. If a claim is not made within that time period a non-owner then must institute an action within one year after its expiration, LSA R.S. 9:4813(E). It is clear that Ernest Simon and Son did not timely institute an action against USF & G and therefore the surety's liability is extinguished."
The statutory time provision for institution of the action which the trial court felt was applicable, R.S. 9:4813(E), reads as follows:
"E. The surety's liability, except as to the owner, is extinguished as to all persons who fail to institute an action asserting their claims or rights against the owner, the contractor, or the surety within one year after the expiration of the time specified in R.S. 9:4822 for claimants to file their statement of claim or privilege."
The present performance bond was a contract of suretyship, but it was not a surety bond regulated by the Private Works Act. Therefore, the time limitation on the surety's liability is not governed by R.S. 9:4813(E).
Contractor's bonds are of two types, sometimes combined in a single bond: performance bonds, and labor and material payment bonds. A performance bond guarantees that the contractor will perform the contract. A labor and material payment bond guarantees that all bills for labor and materials contracted for and used by the contractor will be paid by the surety if the contractor defaults. 17 Am.Jur.2d Contractors' Bonds, Section 1 (1964). Our Private Works Act recognizes the difference between a performance bond and a payment bond. See R.S. 9:4812(C) and Comment (d) thereunder.
The provisions of the Act relating to the liability of the surety (mainly R.S. 9:4812 and 4813), apply only to (1) payment bonds, and (2) bonds furnished by the general contractor in favor of the owner and all persons having a claim against the contractor arising out of the work performed. R.S. 9:4812(C)(1). The Act does not purport to regulate performance bonds at all. Its only mention of a performance bond is the provision that the payment bond required of the general contractor shall be deemed to include a performance condition in favor of the owner, unless the bond expressly excludes such a guarantee. R.S. 9:4812(C)(2). Surety bonds, whether for payment or performance or both, given by subcontractors to contractors, are not mentioned at all in the Act.
The setting in the present case is a Private Works setting, but the bond in dispute is not a Private Works Act bond. It is a conventional suretyship contract between the parties, and the conditions of the undertaking are determined by the terms of the contract establishing it. Cf. Jimco, Inc. v. Gentilly Terrace Apartments, Inc., 230 So.2d 281 (La.App. 4th Cir.1970).
The bond in the present case was both a performance and a payment bond. It was a performance bond by virtue of the condition of the obligation that Latch would "well, truly and faithfully perform all the obligations assumed by him" in the contract wherein he agreed to furnish the labor and materials for roofing and putting sheet metal on the church, in accordance with the terms of the contract between Simon and St. Peter's. The extinguishment of the surety's liability by the passage of one year after the expiration of the time specified in R.S. 9:4822 for claimants to file their "statement of claim or privilege", as provided by Section 4813(E) of the Act, pertains exclusively to a payment bond given by a general contractor for the benefit of the owner and others, and has no application to a performance bond given by a subcontractor in favor of a contractor.
Suretyship is an accessory promise by which a person binds himself for another already bound, and agrees with the creditor to satisfy the obligation, if the debtor does not. La.C.C. art. 3035. The performance bond herein was accessory to the contract between Latch and Simon. Causes of action *413 against a contractor for defective construction of a building on immovable property prescribe in ten years. La.C.C. art. 3500; R.S. 9:2772. The language of the surety contract herein gave Simon a right of action against the surety on the bond, the condition of the surety's obligation being that Latch would well, truly and faithfully perform the subcontract in accordance with the plans and specifications. If the condition of the bond was not fulfilled, then it remained in full force and effect, and it was subject to the prescription of ten years. No one disputes that the third party claim was timely filed if the applicable prescription period is ten years. The exception of prescription of one year should have been, and it now is, overruled.

ON THE MERITS
There are three questions to be decided on the merits. The first question is whether the facts show that Latch put on a roof that was both defective and in noncompliance with the plans and specifications. The second is whether the condition of the surety's obligation encompassed completion of the subcontract in accordance with the plans and specifications: in other words, whether the construction of a roof that was both defective (failure to overlap the felt) and in violation of the plans and specifications (the unapproved substitution of twopiece Boston ridge caps for the contract requirement of terra-cotta "V" one-piece ridge caps) was a default which the surety was required to make good. The third question is whether the amount Simon demands was proved as Latch's contract liability.
The testimony as to the cause of the leaking roof places the blame squarely on the performance of the roofing subcontractor. The depositions of Perry Brown, an architect, Walter Smiley, a roofing superintendent, and Don Chatelain, a roofing estimator, show that asphalt shingle capping was used on the roof, and also that the felt placed immediately underneath the shingles was not continuous but had open joints. The plans and specifications of the contract between Simon and St. Peter's called for terra-cotta capping. The deposition of Latch contains the admission that Boston ridge cap (two pieces) was substituted for terra-cotta "V" ridge caps (one piece), and also that the felt underneath the caps was not lapped over the ridge but was butted together at the ridge. Latch claimed to have had the consent of Simon for the substitution of ridge caps; Simon denied any such change order. Latch admitted that such a change would have had to be in writing to comply with the contracts and that there was no writing evidencing that change. The testimony preponderates that the failure to overlap the felt was defective workmanship.
Based on the record, the preponderance of the evidence shows that it was a combination of the substituted ridge caps and the failure to overlap the felt that caused the persistent leaking roof. We do not hesitate to conclude from the record that Latch put on a roof that was both defective and in nonconformance with the plans and specifications.
The second question is whether, in light of these shortcomings, Latch can be said to have "well, truly and faithfully performed" the roofing subcontract.
USF & G argues that the condition of its bond was limited to the completion of the subcontract to build the roof, and that the quality of the performance of the contract does not matter. This argument is inconsistent with the theory of suretyship in our state and with the general law on the subject in other states. Since suretyship is an accessory promise by which a person binds himself for another already bound, by its very nature the contract binds the surety to the identical performance obligation of the principal under the latter's contract with the obligee. La. C.C. arts. 3035, 3036 and 3040. If the principal breaches the performance bond the surety is liable for such breach. 13 Couch on Insurance, 2d Ed., § 47:127 (1982). The concept of a breach or a default on a contract is not limited to the obvious case of the contract's not being *414 performed but extends to any major departure from the contract, even though the building itself, or other construction itself, is actually physically completed. Id., § 47:129. Louisiana cases on the subject, though few, are to the same effect. In Macaluso v. Thibodeaux, 232 La. 431, 94 So.2d 426 (1957), a contractor, having agreed to raise and remodel Macaluso's house, furnished a surety bond which named Macaluso as obligee, the condition of the obligation being described as "for the true and faithful performance of said contract." During the performance of the contract the front part of the house fell due to the negligence of the contractor. The surety denied liability arguing that the principal's negligence was not covered by the surety bond. The court held that the loss suffered by the owner was directly attributable to the failure of the contractor to faithfully perform his contract. The surety was held liable in solido with the contractor.
In another case, Hughes v. Pendergraft, 454 So.2d 380 (La.App. 4th Cir. 1984), the owner of a house sued the principal contractor and his surety when cracks developed in the slab due to the negligence of the contractor during construction. In its bond the surety bound itself for the "true and faithful performance of said contract." It was held that the crack in the slab was a breach of the principal obligation of the contract, and since the surety bond guaranteed the true and faithful performance of the contract, the surety was liable for the negligence of the contractor in carrying out the terms of the contract.
We likewise conclude that the condition of the surety's obligation in the present case made USF & G's liability co-extensive with that of Latch, and that it cannot avoid responsibility by claiming that its liability was for something other than performance.
Finally, we turn to the question of what amount Simon, as subrogee of St. Peter's, has proved he is entitled to recover. Simon's demand is $10,000, plus onehalf of the court costs that had accumulated in the main demand of this lawsuit. The only evidence in the record of what it would take to complete performance of the roofing subcontract was the testimony of Don Chatelain, an estimator for a roofing and sheet metal contractor, who testified that the necessary repairs came to $18,910. Since the amount paid by Simon is well within both the estimate of repairs and the amount of the surety bond, $21,280, he is entitled to recover the full amount claimed.
For the foregoing reasons, the judgment of the trial court maintaining the exception of prescription and dismissing the third party demand of Simon against USF & G is reversed and set aside; the exception of prescription is overruled. On the merits, judgment is rendered in favor of the Partnership of Ernest Simon & Son, and against United States Fidelity & Guaranty Company, in the amount of $10,000 and one-half of the court costs incurred in this action as of the date of the original judgment signed below. Judgment is further rendered against USF & G assessing it with all remaining costs, including the costs of this appeal.
JUDGMENT OF DISMISSAL ON EXCEPTION OF PRESCRIPTION REVERSED; JUDGMENT ON THE MERITS RENDERED.