STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2021 CA 1256

DQSI, L.L.C.

VERSUS

APC CONSTRUCTION, LLC AND AEGIS SECURITY INSURANCE
COMPANY

*DATE OF JUDGMENT:*   'JUL 2 9 2022

ON APPEAL FROM THE TWENTY-SECOND JUDICIAL DISTRICT COURT
PARISH OF ST. TAMMANY, STATE OF LOUISIANA
NUMBER 201714015, DIVISION H

HONORABLE ALAN A. ZAUNBRECHER, JUDGE

* * * * * *

| | |
|---|---|
| John Anthony Cangelosi<br>Timothy Sean Madden<br>Diana J. Master<br>New Orleans, Louisiana | Counsel for Plaintiff-Appellant<br>DQSI, L.L.C. |
| Gerald A. Melchiode<br>Jeffery B. Struckhoff<br>Benjamin M. Pri-Tal<br>New Orleans, Louisiana | Counsel for Defendant-Appellee<br>AEGIS Security Insurance Company |
| John Anthony Cangelosi<br>Timothy Sean Madden<br>Diana J. Master<br>New Orleans, Louisiana | Counsel for Defendant-Appellee<br>Allied World Specialty Insurance<br>Company Group |
| Gerald A. Melchiode<br>Jeffery Struckhoff<br>Benjamin M. Pri-Tal<br>New Orleans, Louisiana | Counsel for Defendant-Appellee<br>APC Construction, LLC |

Wayne G. Zeringue, Jr.,
Christopher K. Ulfers
New Orleans, Louisiana

Daniel J. Hoerner
Andre Jean Mouledoux
Mark E. Hanna
Trevor M. Cutaiar
New Orleans, Louisiana

Counsel for Defendant-Appellee
Ponchartrain Materials Corporation


Counsel for Defendant-Appellee
Pine Bluff Sand and Gravel Company

\* \* \* \* \* \*

BEFORE: GUIDRY, HOLDRIDGE, AND CHUTZ, JJ.

Disposition: AFFIRMED.

*Guidry, J. concurs.*

2

*Holdridge J. dissents for the reasons assigned*

**CHUTZ, J.**

Plaintiff-appellant, general contractor DQSI, L.L.C. (DQSI), appeals the trial court's grant of summary judgment, dismissing all its claims against defendant-appellee, Aegis Security Insurance Company (Aegis), the performance bond surety for subcontractor APC Construction, LLC (APC), arising out of a subcontract for the construction of a rock dike. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 9, 2016, DQSI entered into a public contract with owner, Louisiana Coastal Protection and Restoration Authority (CPRA), to build a rock dike located in Lafourche Parish.[1] DQSI entered into a subcontract with APC on August 12, 2016, for the purpose of performing the construction required to build the rock dike. The subcontract incorporated into the agreement the terms of the May 9, 2016 contract between DQSI and CPRA and also required, among other things, that APC obtain a bond securing its performance of the subcontract.[2] On August 16, 2016, Aegis issued Bond # B10 028 188.

DQSI filed this lawsuit on August 25, 2017, naming APC and Aegis as defendants. Among its allegations, DQSI claimed that APC failed to perform its work under the subcontract in a professional and workmanlike manner and did not timely complete the rock dike project. Thus, DQSI sought damages

---

[1] The prime contract between CPRA as owner and DQSI as general contractor was entitled, "Project No. BA-02/ GIWW to Clovelly Hydrologic Restoration 2015 Maintenance Project." It is undisputed that the rock dike construction was located on Bay L'Ours -- Little Lake.

[2] In this appeal, DQSI does not contend it is entitled to recovery under the subcontractor labor and material payment bond that Aegis also issued.

3

from both APC and Aegis as APC's performance bond surety. APC and Aegis answered the lawsuit on November 20, 2017, generally denying DQSI's allegations. DQSI subsequently filed a supplemental and amended petition averring that APC made multiple false representations concerning its performance and committed other breaches of the subcontract. DQSI alleged that Aegis was liable in solido with APC for resulting damages. Aegis answered the additional claims, generally denying liability.

After the trial court overruled Aegis's peremptory exceptions of no right of action and no cause of action, Aegis filed a motion for summary judgment, seeking dismissal from DQSI's lawsuit. After a hearing on March 4, 2021, the trial court granted summary judgment and dismissed all claims against Aegis. DQSI devolutively appealed.

## SUMMARY JUDGMENT

A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. *Georgia-Pacific Consumer Operations, LLC v. City of Baton Rouge*, 2017-1553 (La. App. 1st Cir. 7/18/18), 255 So.3d 16, 21, writ denied, 2018-1397 (La. 12/3/18), 257 So.3d 194. The Code of Civil Procedure places the burden of proof on the party filing a motion for summary judgment. See La. C.C.P. art. 966D(1). The mover can meet its burden by filing supporting documentary evidence consisting of pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions with its motion for summary judgment. La. C.C.P. art. 966A(4).

Once the mover properly establishes by its supporting documents that genuine issue of material facts exists, the mover does not have to negate all of the essential elements of the adverse party's claims, actions, or defenses if it will not bear the burden of proof at trial. La. C.C.P. art. 966D(1). The moving party must

4

only point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. La. C.C.P. art. 966D(1).

The burden then shifts to the non-moving party to produce factual support, through the use of proper documentary evidence attached to its opposition, which establishes the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966D(1). If the non-moving party fails to produce sufficient factual support in its opposition which proves the existence of a genuine issue of material fact, Article 966D(1) mandates the granting of the motion for summary judgment. *Babin v. Winn-Dixie Louisiana, Inc.*, 2000-0078 (La. 6/30/00), 764 So.2d 37, 40.

In reviewing the trial court's decision on a motion for summary judgment, this court applies a de novo standard of review using the same criteria applied by the trial courts to determine whether summary judgment is appropriate. *Jackson v. Wise*, 2017-1062 (La. App. 1st Cir. 4/13/18), 249 So.3d 845, 850, writ denied, 2018-0785 (La. 9/21/18), 252 So.3d 914. Factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing a motion for summary judgment, and all doubt must be resolved in the opponent's favor. *Thompson v. Ctr. for Pediatric and Adolescent Medicine, L.L.C.*, 2017-1088 (La. App. 1st Cir. 3/15/18), 244 So.3d 441, 445, writ denied, 2018-0583 (La. 6/1/18), 243 So.3d 1062. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. *Dyess v. American Nat'l Prop. and Cas. Co.*, 2003-1971 (La. App. 1st Cir. 6/25/04), 886 So.2d 448, 451, writ denied, 2004-1858 (La. 10/29/04), 885 So.2d 592.

## DISCUSSION

The bond at issue is a performance bond, which guarantees that the contractor will perform the contract. See *Congregation of St. Peter's Roman*

5

*Catholic Church of Gueydan v. Simon*, 497 So.2d 409, 412 (La. App. 3d Cir. 1986). The conditions of a performance bond are determined by the terms of the contract establishing it. See *Congregation of St. Peter's Roman Catholic Church of Gueydan*, 497 So.2d at 412. See also *L & A Contracting Co., Inc. v. Ram Indus. Coatings, Inc.*, 99-0354 (La. App. 1st Cir. 6/23/00), 762 So.2d 1223, 1236, writ denied, 2000-2232 (La. 11/13/00), 775 So.2d 438 (interpreting the language of the contract for the performance bond to determine the scope of its coverage).

In support of its motion for summary judgment, Aegis provided several documents from APC's files.[3] A copy of the August 12, 2016 subcontract that APC entered into with DQSI to perform work on the rock dike project was attached to the motion. According to the provisions of Task Order #1 of the subcontract, APC was to provide and install all items called for in the prime contract between DQSI and CPRA. In Article 9 of the subcontract, the parties agreed that "[APC] will be given written notice from [DQSI] notifying [APC] of any deficiencies and [APC] will have 20 calendar days to correct stated deficiencies prior to [APC's] contract being terminated."

Additionally, the August 12, 2016 subcontract required that APC provide a performance bond in favor of DQSI. A copy of the August 16, 2016 performance bond, setting forth APC as principal, Aegis as surety, and DQSI as obligee, was also attached to the motion for summary judgment. The provisions of the performance bond state in pertinent part:

> [APC] as Principal ... and [Aegis] as Surety ... are held and firmly bound unto [DQSI] as Obligee ... in the amount of ... $1,383,800.00 for the payment whereof Principal [APC] and Surety [Aegis] bind themselves, their heirs, executors, administrators, successor and assigns, jointly and severally, firmly by these presents.
>
> WHEREAS, Principal [APC] has by written agreement dated the 12th day of August, 2016, entered into a subcontract with Obligee

---

[3] The documents were attached to an affidavit of an APC representative who certified they were true and correct copies.

[DQSI] for [the rock dike project] … which [subcontract] is by reference made a part hereof, and is hereinafter referred to as the subcontract.

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION is such that, if Principal [APC] shall promptly and faithfully perform said subcontract, then this obligation shall be null and void; otherwise it shall remain in full force and effect.

Whenever Principal [APC] shall be, and be declared by Obligee [DQSI] to be in default under the subcontract, the Obligee [DQSI] having performed Obligees's [DQSI's] obligations thereunder:

(1) Surety [Aegis] may promptly remedy the default subject to the provisions of paragraph 3 herein, or;

(2) Obligee [DQSI] after reasonable notice to Surety [Aegis] may, or Surety [Aegis] upon demand of Obligee [DQSI] may arrange for the performance of Principal's [APC's] obligation under the subcontract subject to the provisions of paragraph 3 herein;

(3) The balance of the subcontract price … shall be credited against the reasonable cost of completing the performance of the subcontract. If completed by the Obligee [DQSI], and the reasonable cost exceeds the balance of the subcontract price, the Surety [Aegis] shall pay to the Obligee [DQSI] such excess, but in no event shall the aggregate liability of the Surety [Aegis] exceed the amount of this Bond. If the Surety [Aegis] arranges completion or remedies the default, that portion of the balance of the subcontract price as may be required to complete the subcontract or remedy the default and to reimburse the Surety [Aegis] for its outlays shall be paid to the Surety [Aegis] at the times and in the manner as said sums would have been payable to Principal [APC] had there been no default under the subcontract.

Aegis also submitted a copy of the certificate filed by CPRA stating that the rock dike project was substantially completed on May 12, 2017. The certificate included a punch list setting forth eight items. According to the terms of the certificate, the list of items to be completed or corrected was "tentative," not all-inclusive, and the omission of any items did not relieve DQSI of its responsibility to complete all work as set forth in the prime contract. A recording page from the Lafourche Parish Clerk of Court's Office showed that the two-page substantial completion certificate was filed for registry and recorded on June 27, 2017.

7

A letter dated October 11, 2017, from Stanley Consultants, Inc. (SCI) who served as the rock dike project engineer, stated that after an inspection of the project area, SCI had determined that DQSI and APC had completed the items set forth in the punch list. SCI further elaborated, "Visual observations by [representatives of CPRA, SCI, DQSI, and APC] … confirmed that all items of the punch list have been addressed." In the October 11, 2017 letter, SCI stated that DQSI had submitted a "Contractor's Guarantee Letter on behalf of [its] Subconsultant, APC." SCI advised CPRA that the letter constituted written notice that the rock dike project had been satisfactorily completed and was recommending final acceptance by CPRA. Attached to the letter was APC's written guarantee for one year after final acceptance of the work it had performed. Aegis also placed into the record the public notice of acceptance of the rock dike project, accepted by CPRA on October 2, 2017 and recorded for registry in Lafourche Parish on November 22, 2017.

In response to Aegis's showing, DQSI offered hundreds of pages of documents.[4] Among the salient documents DQSI offered in opposition to Aegis's motion for summary judgment were faxes and emails from DQSI to APC, with copies sent to Aegis or its representative, dated between December 13, 2016 and January 30, 2017, in which DQSI complained that APC was not performing in accordance with the specifications set forth in the prime contract. Fax correspondence to APC dated December 13, 2016, with a copy to Aegis, demanded that APC fully comply with the contractual specifications within the 20-day cure period set forth in Article 9 of the subcontract and demanded that APC comply with the subcontract terms. DQSI stated, "If the matter is not rectified[,] we will

---

[4] The documents were certified as true and correct copies by DQSI representatives.

have no alternative but to seek all legal remedies including asserting a claim against the bond."

A letter from Aegis's agent to DQSI, dated January 25, 2017, acknowledged that in a phone call on January 23, 2017, DQSI stated that it "desired to assert a performance bond claim," which Aegis considered its first notice of a claim by DQSI. The letter also stated "that DQSI was willing to 'stand down' on its claim, if [APC] provided DQSI with a sufficient plan to remedy the alleged default" which Aegis understood APC was prepared to do in a timely manner.

An email from APC's attorney to DQSI showed that on January 25, 2017, APC submitted a revised work plan to DQSI. On January 26, 2017, DQSI advised APC that even with the revised work plan, complained-of deficiencies and issues remained. According to DQSI, the revised work plan was likely to be rejected by SCI and CPRA and, therefore, not satisfactory. DQSI stated, "Should APC fail to provide an acceptable plan to DQSI in a timely manner ... APC will remain in default." It is undisputed that a copy of the email was sent to Aegis.

On January 30, 2017, DQSI sent a letter to APC, with a copy to Aegis, acknowledging that one of the complained-of deficiencies had been addressed but that the others had not. DQSI stated, "[T]his letter shall ... serve as notice that APC continues to ignore the contract documents and improperly perform work and this is causing a situation that will require additional remedial work." Making specific demands for APC's performance, DQSI further elaborated, "If the matter is not rectified[,] we will have no alternative but to seek all legal remedies including asserting a claim against the bond."

APC's performances apparently improved because the next communication between DQSI and APC contained in the record occurred after CPRA filed its certificate stating substantial completion had been accomplished on May 12, 2017 into the registry on June 27, 2017. During the period between July 13, 2017 and

9

July 26, 2017, DQSI and APC engaged in acrimonious email correspondence in which APC requested payments from DQSI for APC's performance under the subcontract to which DQSI responded that nonconformity with the project specifications as well as APC's failure to provide as-built surveys precluded processing of the payment requests. By July 31, 2017, DQSI and APC agreed on APC's application of the project specifications so as to permit processing of the payment requests with an assurance by APC that the as-built surveys would be provided by August 2017. On August 24, 2017, APC provided acceptable as-built surveys to SCI. But on August 25, 2017, DQSI brought this lawsuit against APC and Aegis.

Also included among DQSI's documents opposing the motion for summary judgment was a letter, dated July 25, 2017, for which copies were provided to Aegis's agent and attorney. In the letter, DQSI advised APC that DQSI was issuing the subcontractor a "Formal Notice" since, despite its representations to the contrary, APC had yet to complete the punch-list items excepted from the owner's substantial completion certification. DQSI explained to APC that on July 21, 2017, DQSI had visited the rock dike project site and found that the punch-list items had not been completed. DQSI made a demand that APC fully comply with the subcontract. Additionally, DQSI stated, "If the matter isn't rectified, DQSI will have no alternative but to complete the project [itself], at the expense of APC."

The next correspondence occurred subsequent to DQSI's filing of this lawsuit against APC and Aegis. In emails from DQSI to APC, with copies to Aegis's representatives, between September 6 and 9, 2017, DQSI continued to request that APC complete the punch-list items. APC responded that it had completed the work and requested an immediate final inspection of the rock dike project.

10

DQSI also placed into the record the October 2, 2017 site visit report, prepared by SCI, at which representatives for DQSI, SCI, APC, and CPRA were present, that had been attached to SCI's October 11, 2017 letter recommending final acceptance of the rock dike project by CPRA. According to the site visit report's meeting notes, the weather "was less than desirable with high tides due to cool front and north winds." Although all parties observed the entire length of rock dike project, a visual inspection of the execution of particular items was not possible. The parties were able to get "closer to the top of the rock dike" without encountering any problems and "APC stated that a smaller vessel was used" to identify particular items APC had performed to complete the punch list.

After CPRA filed public notice of its October 2, 2017 acceptance of the rock dike project, in a letter dated February 6, 2018, copies of which were sent to Aegis's agent and attorney, DQSI gave "Formal Notice" to APC under the subcontract that APC had not completed the punch-list items. DQSI advised APC to respond within two days with a schedule for completion of the work or "DQSI will retain another subcontractor to complete APC's work and seek recovery of all related damages and expenses from APC."

Aegis asserted that it should be dismissed from this lawsuit because DQSI did not comply with the terms of the performance bond so as to support a claim against the surety. Pointing to the provisions of the bond, which state that "[w]henever [APC] shall be, and be declared by [DQSI] to be in default under the subcontract, [DQSI] having performed [DQSI's] obligations thereunder[,]" Aegis maintains that as a condition precedent to any obligation it may owe to DQSI under the performance bond: (1) APC must have been in default under its subcontract with DQSI; (2) DQSI must have placed APC in default under the subcontract; and (3) DQSI must have performed its obligation under the subcontract. Aegis suggested that the evidence offered in support and opposition to

11

summary judgment establishes that APC was never declared to be in default under the subcontract.

Although the bond does not define the terms "declare" or "default," the term "declared in default" is unambiguous. See *L & A Contracting Co. v. S. Concrete Servs., Inc.*, 17 F.3d 106, 110 (5th Cir. 1994). Before a declaration of default, sureties face possible tort liability for meddling in the affairs of their principals. After a declaration of default, the relationship changes dramatically, and the surety owes immediate duties to the obligee. Sureties deprived of a clear rule for notices of default would be reluctant to enter into otherwise profitable contracts. *L & A Contracting Co.*, 17 F.3d at 110-11.

A declaration of default sufficient to invoke the surety's obligations under the bond must be made in clear, direct, and unequivocal language. The declaration must inform the surety that the principal has committed a material breach or series of material breaches of the subcontract, that the obligee regards the subcontract as terminated, and that the surety must immediately commence performing under the terms of its bond. *L & A Contracting Co.*, 17 F.3d at 111.

Based on the foregoing evidence, we agree with the trial court's conclusion that summary judgment was appropriate. Initially, we note that DQSI's documentary offering contains numerous complaints by DQSI about the timeliness and quality of APC's performance, which were communicated to Aegis or its agent, sufficient to support a finding by the trier of fact that DQSI informed Aegis in terms sufficiently clear, direct, and unequivocal that APC defaulted on its obligations under the subcontract. But DQSI neither alleged in its petition as amended nor offered evidence to allow a trier of fact to find that DQSI clearly, directly, and unequivocally communicated to either APC or Aegis that DQSI regarded the subcontract with APC as terminated and informed Aegis that Aegis must immediately commence performing under the terms of the bond.

In the numerous communications from DQSI to APC for which Aegis and its agents received copies, every promise by DQSI indicating it intended to terminate or dismiss APC from the subcontract, or that DQSI intended to perform APC's obligations, was conditional. Thus, DQSI failed to unequivocally express to either APC or Aegis that it regarded APC unable or unwilling to perform and, therefore, was relieved from its obligations under the subcontract.

Additionally, neither the evidence offered by the parties nor DQSI's allegations in its petition as amended advised Aegis that Aegis must immediately commence performing under the terms of the bond. While the January 25, 2017 letter from Aegis's agent to DQSI showed that Aegis acknowledged that DQSI "desired to assert a performance bond claim," it also conditioned its claim stating it was willing to "stand down" if APC undertook a remedial work plan, which the record established APC did. Additionally, the documents DQSI submitted showed that between January 30, 2017 and July 13, 2017, there were no complaints between DQSI and APC. Moreover, the nature of DQSI's complaints relative to APC's alleged material breaches after July 2017 changed. DQSI no longer had issues with APC's failure to comply with the specifications of the prime contract as incorporated by the subcontract but instead complained that APC had failed to complete the punch-list items. This established that the nature of the alleged material breach was not the same as that made at the time of the January 25, 2017 letter. Thus, the January 25, 2017 letter from Aegis to DQSI cannot support a finding that DQSI advised Aegis that Aegis must immediately commence performing under the terms of the bond.

Although DQSI points to its filing of the lawsuit on August 25, 2017, prior to CPRA's public notice of its October 2, 2017 acceptance of the rock dike project, as sufficient evidentiary support to establish the existence of material issues of fact as to whether Aegis was informed that DQSI regarded the subcontract as

13

terminated and that Aegis must immediately commence performing under the terms of its bond, such assertions are belied by DQSI's February 6, 2018 letter, transmitted well after the lawsuit was filed, giving "Formal Notice" to APC, advising that APC had two days to respond to DQSI's demand for completion of the punch list or that DQSI would retain another subcontractor to complete APC's work. And DQSI offered nothing to show that after February 8, 2018, it advised Aegis that APC was declared to be in default or terminated from the subcontract and that Aegis must immediately commence performing under the terms of the bond.[5]

DQSI included invoices in support of its own performance on October 12, 2017 and February 1, 2018 when it went to the rock dike project site to investigate the status of the punch-list items that DQSI alleged was among APC's obligations to perform under the subcontract. Additionally, DQSI provided invoices of a subcontractor it hired to complete the punch-list items on March 13, 2018 that DQSI averred were among APC's obligations to perform. But the record fails to establish that any of the invoices were provided to Aegis contemporaneously with execution of the work. Therefore, the invoices do not show that DQSI informed Aegis that Aegis must immediately commence performing under the terms of its bond.

The record lacks any evidence demonstrating that Aegis was ever informed that DQSI regarded the subcontract with APC terminated and that DQSI informed Aegis that Aegis must immediately commence performing under the terms of its

---

[5] Although DQSI submitted with its opposition a June 2018 letter from Aegis acknowledging a May 15, 2018 claim by DQSI against the bond, nothing in the letter established that APC was declared in default by DQSI.

bond. Accordingly, the trial court correctly dismissed Aegis from this litigation.[6]

## DECREE

For these reasons, the trial court's judgment is affirmed.[7] Appeal costs are assessed to plaintiff-appellant, DQSI, L.L.C.

**AFFIRMED.**

---

[6] Because we find Aegis is entitled to dismissal under the terms of the bond, we pretermit a discussion of whether Aegis is entitled to dismissal from this lawsuit as a matter of law since the rock dike project was certified as substantially complete on May 12, 2017, before the lawsuit was filed, and subsequently accepted by the owner on October 2, 2017, after litigation ensued.

[7] Aegis filed an alternative motion for partial summary judgment asking for the dismissal of DQSI's claims for liquidated damages and statutory penalties for alleged bad faith claims adjustment under La. R.S. 22:1892 and 1973. Because we conclude the trial court correctly granted summary judgment dismissing Aegis from the lawsuit, whether the alternative motion for summary judgment is viable in this appeal and the parties' contentions on the merits of alternative motion are not before us.

| | |
|---|---|
| DQSI, LLC | STATE OF LOUISIANA |
| | COURT OF APPEAL |
| VERSUS | FIRST CIRCUIT |
| APC CONSTRUCTION, LLC AND AEGIS SECURITY INSURANCE COMPANY | 2021 CA 1256 |

**HOLDRIDGE, J., dissenting.**

Louisiana Code of Civil Procedure article 966(A)(3) provides, "After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." Appellate courts review summary judgments *de novo*, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, summary judgment is appropriate. A material fact is one that would matter at a trial on the merits. **Collins v. Franciscan Missionaries of Our Lady Health System, Inc.**, 2019-0577 (La. App. 1st Cir. 2/21/20), 298 So.3d 191, 194-95, **writ denied**, 2020-00480 (La. 6/22/20), 297 So.2d 773. A "genuine issue" is a "triable issue." **Smith v. Our Lady of the Lake Hosp., Inc.**, 93-2512 (La. 7/5/94), 639 So. 2d 730, 752. Any doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion and in favor of trial on the merits. **Collins**, 298 So.2d at 195.

The performance bond here triggers Aegis' surety obligations upon DQSI's declaration that APC is "in default" under the subcontract; the terms of the performance bond do not require a formal termination of the subcontract to trigger Aegis' liability, as the majority concludes. Louisiana Civil Code article 1991 provides, in pertinent part, "An obligee may put the obligor in default by a written

request of performance, ... or by filing suit for performance, or by a specific provision of the contract." Here, while APC's failure to finish the scope of its work timely under the terms of the subcontract is largely undisputed, the parties dispute what precise steps were required of DSQI to put APC in default. The record establishes that DQSI and Aegis used the terms "default" and "alleged default" in their respective correspondences to each other beginning as early as January 2017, months before the certificate of substantial completion was issued. The various forms of correspondence between DQSI, APC, and Aegis show that DQSI referenced the deficiencies of APC's work and stated its desire to assert a performance bond claim. Further, APC submitted a revised work plan and DQSI complained of remaining deficiencies, while allowing APC to continue performing remedial work. Based on those documents, reasonable minds could reach different conclusions regarding whether DQSI actually placed APC in default, triggering Aegis' liability. Thus, the trial court erred in finding that the supporting documents presented by Aegis were sufficient to resolve all material factual issues and that Aegis was entitled to summary judgment as a matter of law.[1]

The majority relies on **L & A Contracting Co. v. S. Concrete Servs., Inc.**, 17 F.3d 106 (5th Cir. 1994), to support its conclusion that an express termination of the subcontract is required to trigger the performance bond obligation. That case, while clearly not binding authority, is additionally factually distinguishable from the facts of the instant case. There, the court emphasized, "None of the letters [the general contractor] sent to [the subcontractor] and [the performance bond surety] even contained the word "default", nor do we find an unequivocal declaration of

---

[1] Furthermore, evidence of the parties' intent may be necessary in this case to determine whether the actions and correspondence of DQSI placed Aegis in default. It appears the two parties may have interpreted DQSI's actions differently. Summary judgment is seldom appropriate for determinations based on subjective facts when intent or motive is at issue. **Berthelot v. Indovina**, 2021-1546 (La. App. 1st Cir. 6/3/22), ___ So.3d ___, 2022 WL 1828333.

default in the other items of correspondence [the general contractor's] brief calls to our attention." In the present case, Aegis referenced APC's "alleged default" in a January 25, 2017 letter that referenced DQSI's stated desire to "assert a performance bond claim." DQSI's January 26, 2017 email to APC, with a copy sent to Aegis, stated, "Should APC fail to provide an acceptable plan to DQSI in a timely manner … APC will remain in default." DQSI also referenced the complained-of deficiencies in subsequent letters and emails, while requesting that APC complete the work.